**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

JONATHAN HEART BROWN,

    Plaintiff,

v.

RONNIE SHUEMAKE; JOSEPH
HUTCHESON; and REGINALD FORD,

    Defendants.

CIVIL ACTION NO.: 6:12-cv-99

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who was formerly incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action, as amended, pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. (Docs. 1, 6.) Plaintiff's Complaint, as amended, was served on Defendants Sergeant Ronnie Shuemake, Sergeant Joseph Hutcheson, and Lieutenant Reginald Ford ("Defendants") based on Plaintiff's assertions that Defendants violated his Eighth Amendment rights. (Doc. 19.) Defendants filed a Motion for Summary Judgment on December 5, 2014. (Doc. 134.) After receiving an extension of time to do so, Plaintiff filed a Response to Defendants' Motion. (Doc. 138.) Defendants filed a Reply. (Doc. 140.) For the reasons which follow, Defendants' Motion should be **GRANTED**, Plaintiff's Complaint should be **DISMISSED**, and this case should be **CLOSED**. Plaintiff should also be **DENIED** leave to proceed *in forma pauperis* on appeal.

# BACKGROUND[1]

Plaintiff contends that on two occasions in August 2012, Defendants failed to protect him from a known threat to his safety. Specifically, Plaintiff contends that his cell mates were members of a gang, that they threatened him, and that one cell mate eventually assaulted him.

Plaintiff asserts his cell mate as of August 5, 2012, Dominique Jenkins, was a member of the "Crip Gang." (Doc. 1, p. 6.) Plaintiff also asserts Jenkins obtained a weapon (a lock inside of a sock) from another unknown Crips Gang member, along with a note directing him to "smash" Plaintiff, on August 5, 2012. Id. Plaintiff states he was able to get the weapon from Jenkins' possession and turned it over to three (3) prison authorities (none of whom are named Defendants). Id. Plaintiff alleges he requested of these three (3) prison authorities that he be placed in protective custody. Id. Plaintiff asserts Jenkins was relocated to another cell after this incident, but Plaintiff was "left to [lie] lame to the dangers of someone ordering an assault on my life by distributing weapons to their affiliated gang members."[2] (Id. at pp. 7–8.)

Plaintiff avers he received a new cell mate, Quavious Rumph, who was also a Crips Gang member, on August 8, 2012, who had a "heep (sic) of misbehavior reports for assaults on inmates." (Id. at p. 9.) In fact, Plaintiff maintains, Rumph returned from court this same day because he was sentenced to an additional two (2) years' imprisonment based on a felony assault conviction he received after he assaulted another inmate. Id. Plaintiff contends he wrote a letter to Chief Counselor Smith on August 13, 2012, and asked to be placed in protective custody

---

[1] The recited allegations are taken from Plaintiff's Complaint, as amended, and are viewed in the light most favorable to Plaintiff, the non-moving party.

[2] Defendants state it is unclear whether Plaintiff intended for the August 5, 2012, incident to represent a separate claim or whether Plaintiff included this information in his Complaint to give the Court context for the August 21, 2012, incident. Defendants assert that neither incident presents a triable issue. (Doc. 134-1, p. 2.) The undersigned addresses the August 5, 2012, incident as background for the August 21, 2012, incident, as well as a separate occurrence.

because Plaintiff was concerned about his safety by being in the same cell as Rumph. Id. Plaintiff also contends he sent Warden Bruce Chatman a classification appeal form on August 16, 2012, and requested to be moved to a safer environment away from Rumph. Id. Plaintiff states that Rumph attacked him from behind on August 21, 2012, and told Plaintiff, "This is for my loc[k]—you should have knowed (sic) this was coming[.]" (Id. at pp. 9–10.) According to Plaintiff, Rumph wrapped his legs around his waist, pulled him to the ground, and squeezed Plaintiff's neck with such pressure that Plaintiff almost lost consciousness. (Id. at p. 10.)

Plaintiff contends he was able to knock faintly on the door during this assault, which caught the attention of a correctional officer trainee, Mr. Lanier, who came over and looked into the cell. Id. Plaintiff contends Lanier came back to the cell with a floor officer, who also looked into the cell and told Plaintiff and Rumph to stop what they were doing. Id. Plaintiff asserts the floor officer left his cell and brought Defendants to his cell. Id. Plaintiff also asserts he was able to grab Rumph's wrists, which prevented Rumph from being able to continue choking Plaintiff, before Defendants arrived at his cell. Id. Plaintiff notes Rumph was twisting his wrists and turning his arms in an effort to get away from Plaintiff, yet Defendants "casually sat there and watched" through the tray flap without assisting Plaintiff in any way for several minutes. (Id. at p. 10.)

Plaintiff alleges Defendant Shuemake finally ordered Rumph to stop what he was doing, Rumph stopped attacking him, and Plaintiff let go of Rumph. (Id. at p. 11.) However, Plaintiff avers, Defendants allowed Plaintiff and Rumph to remain in the cell despite Plaintiff's requests to be removed from the cell. (Id. at p. 11–12.) Plaintiff asserts that the tray flap and window slider on the cell door were closed, and Rumph immediately began attacking him again. (Id. at

3

p. 12.) Plaintiff states Rumph punched him several times before he and Rumph were sprayed with mace. (Id.)

Plaintiff asserts that after he was sprayed with mace, he immediately complied with Defendant Shuemake's directive to "cuff up" and that he was then removed from the cell and taken to the medical unit. (Id.) Plaintiff avers he suffered a lip laceration, a neck injury, and trauma to his face and neck as a result of this attack. (Id. at p. 10.) Plaintiff asserts he was later moved to another dormitory, even though that dormitory was where D. Jenkins was housed. (Id. at p. 13.) Plaintiff's Complaint was served upon Defendants based on Plaintiff's assertions that they were deliberately indifferent to his safety on August 5 and 21, 2012, and that Defendants failed to intervene in an altercation with another inmate on August 21, 2012. (Doc. 19.)

## DISCUSSION

Defendants set forth two grounds for summary judgment in their Motion. First, Defendants contend Plaintiff's allegations against them do not rise to the level of establishing a violation of his Eighth Amendment rights, either based on the August 5, 2012, incident or the August 21, 2012, incidents. Defendants state there is no evidence that they were aware of a specific risk to Plaintiff's safety and were deliberately indifferent to that risk. As a result, Defendants maintain, Plaintiff cannot sustain his claims against them. Second, Defendants maintain they are entitled to qualified immunity. In support of their position, Defendants have submitted a Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, declarations they each signed under the penalty of perjury, and videos in support of their Motion.[3]

---

[3] The videos Defendants submitted do not appear to be germane to the issues before the Court. Rather, these videos depict events which occurred after the alleged events giving rise to Plaintiff's Complaint. Nevertheless, the Court viewed these videos in making its recommendation for disposition of Defendants' Motion.

4

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to any fact material to his Eighth Amendment claims, and Defendants' Motion is due to be granted as a result.

**I.      Standard of Review**

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most

favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.     Plaintiff's Eighth Amendment Claims**

Defendants aver Plaintiff never discussed the August 5, 2012, incident involving Jenkins with any of them. Defendants also aver they were not present at the time of this incident, and they had no knowledge that Jenkins posed any threat to Plaintiff's safety. Defendants contend that, while they may have later learned of the August 5, 2012, incident, this incident did not inform them that Rumph posed any threat to Plaintiff. (Doc. 134-1, p. 3.) Defendants note Plaintiff cannot prevail on a failure to protect claim based on the August 5, 2012, incident, if this incident is viewed as a separate claim, for several reasons: 1) there is no evidence that any Defendant had prior knowledge of Jenkins' alleged threat to Plaintiff's safety; 2) none of the Defendants were present at the time of this incident and could not have intervened; and 3) Plaintiff's deposition testimony is clear that he was not injured in any way as a result of Jenkins' threat. (Id. at p. 10.)

Likewise, Defendants assert they had no knowledge before August 21, 2012, that Rumph posed any risk to Plaintiff's safety. (Id. at p. 6.) Defendants state the incident with Rumph occurred over a period of ten to fifteen (10–15) minutes' time, which includes the period of time when no Defendant was aware that Plaintiff and Rumph were involved in a fight. Defendants contend they acted "promptly and reasonably" once they were made aware of the fight. (Id. at p. 11.)

Defendants' arguments and Plaintiff's claims implicate the Eighth Amendment's proscription against cruel and unusual punishment. That proscription imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates.

6

"'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010). Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claimant, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the

7

objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90). Allegations of a jail official's generalized awareness that someone is "'a problem inmate' with a well-documented history of prison disobedience and [is] prone to violence'" "is not enough to show [his] subjective awareness that the inmate poses a substantial risk of serious harm" to other inmates. Gross v. White, 340 F. App'x 527, 531 (11th Cir. 2009) (first alteration in original) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)).

### A. Claim based on August 5, 2012, incident

Through their supporting materials, Defendants make the following contentions regarding the August 5, 2012, incident. Jenkins and Plaintiff became cell mates "[w]ay long before" August 5, 2012, (doc. 134-3, p. 22), and Plaintiff had not had any problems with Jenkins before August 5, 2012. (Id. at p. 23.) The genesis of the Jenkins' incident was Jenkins' receipt of a lock in a sock from another inmate to be used as a weapon against Plaintiff. (Id. at p. 24; Doc. 134-2, ¶ 15.) However, Plaintiff was able to take the weapon away from Jenkins before Jenkins could use the weapon against him, and Plaintiff was not injured as a result of any potential altercation with Jenkins. (Id. at ¶¶ 16–17; Doc. 134-3, p. 24.) Plaintiff gave the weapon to Lieutenant R.L. Jackson, and Jenkins was placed in another cell. (Id. at p. 25; Doc. 134-2, ¶¶ 18, 19.) Plaintiff did not discuss the August 5, 2012, incident with any of the

Defendants, nor were any of the Defendants present when this incident occurred.[4] (Id. at ¶¶ 21, 22; Doc. 134-3, pp. 27–28; Doc. 134-4, p. 2; Doc. 134-7, p. 1; Doc. 134-10, p. 1.) Additionally, Defendants were not aware of any risk to Plaintiff's safety which Jenkins may have posed prior to August 5, 2012. (Doc. 134-2, ¶ 23; Doc. 134-4, p. 2; Doc. 134-7, p. 2; Doc. 134 10, p. 2.) In fact, Plaintiff asserts in his Complaint he asked three (3) prison officials—none of whom are the named Defendants—that he be placed in protective custody after Jenkins' attempted assault. (Doc. 1, p. 7.)

There is nothing before the Court indicating that Jenkins posed any risk to Plaintiff's safety prior to August 5, 2012, or that Defendants were aware of any risk to Plaintiff's safety—from Jenkins or any other source—on or before August 5, 2012. A review of Plaintiff's Complaint fails to reveal any fact indicating that Defendants were subjectively aware of any objective risk to Plaintiff's safety prior to August 5, 2012. See Thomas, 614 F.3d at 1312, *supra*. In addition, Plaintiff offers nothing in his Response to Defendants' Motion which refutes Defendants' avowed lack of knowledge of any problem he had with Jenkins on or before August 5, 2012. Instead, by Plaintiff's own testimony during his deposition, he admits he did not speak to any of the named Defendants about concerns for his safety prior to August 5, 2012. (Doc. 134-3, pp. 27–28.) Plaintiff fails to create a genuine dispute as to any fact material to his deliberate indifference claim concerning the August 5, 2012, incident. Thus, to the extent

---

[4] Plaintiff stated during his deposition that he spoke to Keith Peterson about the August 5, 2012, incident the following day. Plaintiff also stated Peterson told him he (Peterson) would speak to Defendant Hutcheson, and Peterson confirmed to Plaintiff he spoke with Defendant Hutcheson and another prison official about this incident. (Doc. 134-3, pp. 27–28.) Even accepting this testimony as true, Plaintiff fails to establish Defendant Hutcheson had prior knowledge of any risk to Plaintiff's safety Jenkins may have posed prior to August 5, 2012. Additionally, and as will be discussed further in this Report, any knowledge of Jenkins' alleged threat to Plaintiff's safety on Defendants' part would not have placed Defendants on notice of Rumph's alleged threat to Plaintiff's safety.

9

Plaintiff alleges that this incident constitutes a separate violation of his Eighth Amendment rights, this portion of Defendants' Motion should be **GRANTED**.

### B. Claims based on August 21, 2012, incidents

It appears Plaintiff seeks to hold Defendants liable for the events which occurred on August 21, 2012, by claiming they failed to intervene in a timely manner during Plaintiff's altercation with Rumph. Nevertheless, the Court also addresses any putative contention by Plaintiff that Defendants were aware that Rumph posed a risk of harm to Plaintiff's safety prior to August 21, 2012 and that they were deliberately indifferent to that risk.

#### 1. Deliberate indifference claim

Defendants declare they had no knowledge prior to August 21, 2012, that Rumph posed any threat to Plaintiff's safety. (Doc. 134-4, p. 3; Doc. 134-7, p. 3; Doc. 134-10, p. 3.) Indeed, Plaintiff testified during his deposition that he had not had any problems with Rumph prior to August 21, 2012. (Doc. 134-3, p. 29.) Thus, there appears to be no genuine dispute as to any fact material on the issue of whether Defendants were deliberately indifferent to an objectively serious risk of harm to Plaintiff's safety posed by Rumph. The undersigned notes Plaintiff's assertions in his Complaint that Rumph had a history of having several "misbehavior reports for assaults on [other] inmates[ ]" and was sentenced to additional prison time on August 8, 2012, the same day he became Plaintiff's cell mate, based on a felony conviction for assaulting another inmate. (Doc. 1, p. 9.) However, even if Defendants were aware of Rumph's alleged reputation for violence against other inmates, this knowledge could not be imputed to Defendants to show they were aware of a risk of harm to Plaintiff's safety. Gross, 340 F. App'x at 531 (noting that allegations of a jail official's generalized awareness that someone is a problem inmate with a well-documented history of prison disobedience and is prone to violence is not enough to show

his subjective awareness that the inmate poses a substantial risk of serious harm to other inmates) (internal punctuation and citation omitted).

Further, Plaintiff offers nothing which indicates he informed any of the named Defendants that his safety was at risk at the hands of Rumph. The Court notes Plaintiff's assertion that he told Defendants that Rumph was a member of the Crips Gang, just as Jenkins was, and that Rumph told him he had assaulted Plaintiff because of his lock. (Doc. 134-3, p. 37.) However, there is no evidence before the Court indicating Defendants were aware of any shared affiliation between Jenkins and Rumph or of any specific risk to Plaintiff's safety Rumph posed prior to August 21, 2012.

In short, Plaintiff fails to raise a genuine dispute as to any fact material to his deliberate indifference claim stemming from events which allegedly occurred on August 21, 2012. Therefore, this portion of Defendants' Motion should be **GRANTED**.

2. Failure to intervene claim

As to Plaintiff's failure to intervene claim, Defendants point out that Plaintiff's chief complaint is that prison officials did not open the cell door immediately, enter the cell, and physically separate Plaintiff and Rumph. (Doc. 134-1, p. 12.) Plaintiff described his version of events during his deposition. Plaintiff testified that prior to the fight, he and Rumph had eaten from their lunch trays on August 21, 2012, and Officer Orlando Sharpe was coming around to pick up the trays. Plaintiff stated he was walking from the cell door to his bed when Rumph "swung, like, with an elbow, like a backhand-type swing. And when I twisted my whole body, like, you know, from the swing, that's when he grabbed me from behind." (Doc. 134-3, p. 31.) Plaintiff described the fight in which he and Rumph were involved and stated Cadet Lanier looked inside the cell. (Id. at p. 32.) Plaintiff noted Lanier "took off[ ]", and Orlando Sharpe

11

looked inside the cell and said it looked as if Plaintiff and Rumph were "jiving around and playing." (Id. at p. 33.)

Plaintiff testified that Defendants arrived at his cell, and Defendant Shuemake opened the window and tray flaps on the cell door. (Id. at pp. 33–34.) Plaintiff further testified that, at this point, he had Rumph by the wrists, and he and Rumph were on the ground.[5] (Id. at pp. 34, 36.) Plaintiff stated after a moment or two, Defendant Shuemake told Rumph to quit resisting while Defendants Hutcheson and Ford were standing next to Defendant Shuemake. (Id. at pp. 37–38.) According to Plaintiff, Defendant Shuemake told Defendant Hutcheson that he had not seen anything and tried to close the window and tray flaps to the cell door. Plaintiff stated that he stuck his arm out of the tray flap to prevent Defendant Shuemake from closing the flaps. (Id. at p. 39.)

Plaintiff declared it was "worthless" to get Defendant Shuemake to help him, so he began speaking to Defendant Hutcheson. (Id. at p. 40.) Plaintiff testified he saw Defendant Ford standing in between the other Defendants and asked him whether he was going to allow Defendants Shuemake and Hutcheson to do nothing to remove Plaintiff from the cell and place him in a one-man cell. (Id. at pp. 40–41.) Plaintiff stated a Correctional Emergency Response Team ("CERT") member came to the area, and Defendant Shuemake instructed him to get a shock shield because Plaintiff's arm was still in the flap. Plaintiff declared he told Defendant Shuemake the shock shield was not necessary, and Plaintiff removed his arm from the flap. (Id. at p. 41.) Plaintiff asserted Defendant Shuemake closed the flap and allowed Plaintiff to remain

---

[5] Though Plaintiff did not specifically state he and Rumph were not actively fighting at the time Defendant Shuemake opened the flaps to the cell door, it is apparent that was his meaning by testifying he had Rumph by the wrists, they were on the ground together, and Rumph was resisting Plaintiff's hold. (Doc. 134-3, pp. 34–37.)

12

in the cell. Plaintiff testified that after the flap was closed, Rumph attacked him again by punching Plaintiff in several places on his body. (Id. at pp. 41–42.)

Defendants stated they would not have rushed immediately into the cell where Plaintiff and Rumph were, as to do so would go against their training.[6] (Doc. 134-4, p. 3; Doc. 134-7, p. 2; Doc. 134-10, p. 2.) Defendants declared they are trained to enter a cell in which inmates are fighting only after the inmates are separated and secured or if there are an appropriate number of trained security personnel gathered. (Doc. 134-4, p. 3; Doc. 134-7, pp. 2–3; Doc. 134-10, pp. 2-3.) Defendants also declared they are trained this way because: 1) the fight may be an attempt to lure officers into the cell to be attacked, or 2) one or more of the inmates could have a weapon. (Doc. 134-4, pp. 3–4; Doc. 134-7, p. 3; Doc. 134-10, p. 3.) Defendants stated it would have been impossible to determine whether Plaintiff and/or Rumph had a weapon. (Doc. 134-4, p. 4; Doc. 134-7, p. 3; Doc. 134-10, p. 3.) Defendants Shuemake declared he discharged pepper spray into the cell because Plaintiff and Rumph refused to obey officers' instructions to separate from each other. (Doc. 134-10, p. 3.) Defendants Hutcheson and Shuemake agreed with Plaintiff's testimony that the cell door was not opened until Plaintiff and Rumph were separated and handcuffed, which was in accord with their safety and security training measures. (Doc. 134-7, p. 3; Doc. 134-10, p. 3.)

In his Response to Defendants' Motion, Plaintiff makes much ado about whether Defendants violated the Standard Operating Procedure pertaining to use of force procedures officers are to follow and whether chain of custody procedures were followed. (Doc. 138,

---

[6] Defendant Ford declared he was not present at the time of the incident involving Plaintiff and Rumph. Defendant Ford stated he would have been supervising food tray pick up at that time of day, and because the inmates who helped with the food tray pick up needed to be supervised so closely, he would not have responded to any alert about this incident. (Doc. 134-4, pp. 2–3.) Given Plaintiff's version of events, however, the Court includes Defendant Ford in any discussion regarding Defendants' alleged failure to intervene. Defendant Ford's absence or presence during this time appears to be a determination to be made by the trier of fact, if Plaintiff's failure to intervene claim were to survive summary judgment.

13

pp. 8-10.) Not only do Plaintiff's assertions in this regard fail to create a genuine dispute as to any fact material to his Eighth Amendment deliberate indifference/failure to protect claims, these assertions are irrelevant to the issues before the Court. Rather, the issues before the Court are whether Defendants were deliberately indifferent to Plaintiff's safety based on events occurring on August 5 and 21, 2012, and whether Defendants failed to intervene on Plaintiff's behalf to stop an assault at the hands of another inmate on August 21, 2012. In this regard, Plaintiff declared he asked Defendants to help him from being attacked by Rumph and to remove him from the cell, and Defendants threatened to use a shock shield on Plaintiff's arm, which was outside of the tray flap, in response to his request. (Doc. 138, p. 111.) Plaintiff also declared he removed his arm from the tray, and Defendants left, resulting in Rumph attacking his again. (Id.)

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." Fanning v. Voyles, No. 2:13-CV-02011-WMA, 2014 WL 6629422, at *5 (N.D. Ala. Nov. 21, 2014); Glispy v. Raymond, No. 06–14269-CIV, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (citing Ensley, 142 F.3d at 1407–08)). "However, in order for liability to attach, the officers must have been in a position to intervene." Id. (citation omitted).

Here, there is nothing before the Court indicating Defendants witnessed a fight between Plaintiff and Rumph and failed to intervene on Plaintiff's behalf. Rather, the evidence before the Court reveals Defendants had no reason to believe Rumph posed a threat to Plaintiff's safety at any time prior to August 21, 2012. In addition, the evidence reveals Defendants were not in a

position to see the first altercation. Rather, Plaintiff's own testimony during his deposition reveals Rumph was not assaulting him at the time Defendants came to his cell because Plaintiff was holding Rumph's wrists. (Doc. 134-3, pp. 37–38.) The evidence also reveals that, once Rumph attacked Plaintiff on a second occasion, Defendant Shuemake discharged pepper spray into the cell, which caused Rumph and Plaintiff to separate and allowed officers to handcuff both men before escorting them to the medical unit. Additionally, the undisputed facts show that Defendants were not armed, and to rush into a cell in which two inmates had been fighting without the proper precautions would be against Defendants' training. Seals v. Marcus, No. 1:11-CV-99, 2013 WL 656873, at *8 (Jan. 25, 2013), *adopted by* 2013 WL 663579 (Feb. 22, 2013) ("Regardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.'") (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)). In sum, Plaintiff has not overcome his burden of establishing a genuine dispute as to any fact material to his failure to intervene claim. This portion of Defendants' Motion should, therefore, be **GRANTED**.

Accordingly, there is no need to address Defendants' qualified immunity defense. Losey v. Thompson, 596 F. App'x 783, 790 n.3 (11th Cir. 2015) (once a plaintiff's Eighth Amendment claim fails, the defendant does not need qualified immunity, and there is no need to address the defense separately).

### III.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[7]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied).  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, Plaintiff's potential *in forma pauperis* status on appeal should be **DENIED**, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

---

[7]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

16

CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment, (doc. 134), be **GRANTED**. I further **RECOMMEND** that Plaintiff's Complaint, as amended, (docs. 1, 6), be **DISMISSED**, that this case be **CLOSED**, and that Plaintiff be **DENIED** leave to proceed *in forma pauperis* on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 21st day of July, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA